**INDIANA CIVIL RIGHTS COMMISSION and Martha W. Bernauer, Appellants (Respondents),**

v.

**CULVER EDUCATIONAL FOUNDATION (Culver Military Academy), Appellee (Petitioner Below).**

**No. 50A03–8608–CV–00246.**

Court of Appeals of Indiana, Third District.

July 14, 1987.
Rehearing Denied Aug. 12, 1987.

---

Linley E. Pearson, Atty. Gen., Frederick S. Bremer, Deputy Atty. Gen., for appellants Ind. Civil Rights Comm.

Roy D. Rogers, Indianapolis, for appellant Martha W. Bernauer.

Douglas J. Heckler, Keith E. White, Barnes & Thornburg, Indianapolis, for appellee.

STATON, Judge.

Martha W. Bernauer (Bernauer) was a reading teacher for the Culver Educational Foundation, commonly known as the Culver Military Academy (Academy). Bernauer claimed that her teaching contract was not renewed at the end of a three year probationary term because she had earlier filed a charge of sex discrimination against the Academy. The Indiana Civil Rights Commission (ICRC) found in favor of Bernauer, but that decision was reversed and remanded by the trial court. Bernauer asks us to review the trial court's decision, and raises fifteen issues. We have restated these issues as follows:

1) Whether the trial court's decision to remand for a redetermination of the retaliatory discharge issue was contrary to law;

2) Whether the trial court erred by deciding that the ICRC's findings and conclusions regarding back wages and summer school earnings were unsupported by fact and contrary to law; and

3) Whether the trial court erred by deciding that the ICRC reinstatement order was inequitable and contrary to law.

Reversed.

## I.

### *Remand*

Our review of an administrative order or decision is limited. We will consider the following: whether the administrative agency possessed jurisdiction over the matter decided; whether the order was made in conformity with proper legal procedure; whether the decision was based on substantial evidence; and whether the decision violates any statutory or legal principal. *Ali v. Greater Fort Wayne Chamber of Commerce* (1987), Ind.App., 505 N.E.2d 141, 142. In the instant case, the trial court determined that there was an erroneous finding of fact, and it remanded the case to

the ICRC so that the ultimate issue, whether Bernauer was dismissed in retaliation for filing a sex discrimination charge against the Academy, could be resolved without considering the erroneous finding.

While it is true that where the result of a hearing is substantially influenced by an improper consideration the administrative agency's decision could not be upheld, *Public Service Company of Indiana, Inc. v. Review Board of Indiana Employment Security Division* (1983), Ind.App., 451 N.E.2d 371, 375, in the instant case that did not occur.

The ICRC hearing officer found that Colonel Barone, the person who eliminated the reading program and discharged Bernauer, reinstated the program and hired another person for the next school year. Bernauer concedes that the program was not resumed by Colonel Barone, rather it was restarted by his successor. The Academy argued that this mistake affects the ultimate fact, found by the hearing officer and accepted by the ICRC, that Bernauer was the victim of a retaliatory discharge. The Academy's position was that Colonel Barone had a plan to deal with the economic and social problems facing the Academy which involved the elimination of Bernauer's reading program. Barone's replacement had a different view of the problem and placed a different value on the reading program, which was reinstated when the new Superintendent took charge.

The trial court reasoned as follows:

It is clear that the erroneous finding, at the very least, buttresses the ultimate finding of retaliation and the Hearing Officer's ruling against the Culver Educational Foundation. Without the erroneous finding the remaining evidence should be reconsidered.... [T]his Court ought to order this case remanded to the Indiana Civil Rights Commission to resolve the issue of whether Martha W. Bernauer was dismissed in "retaliation," excluding the erroneous finding of fact by the Hearing Officer, either by a new hearing by a Hearing Officer or by a reconsideration by the Indiana Civil Rights Commission.

R. 365.

■ A reviewing court does not conduct a trial *de novo* and it is limited to either affirming or setting aside the agency determination. In the latter event, the trial court may remand the cause for further proceedings. I.C. 1986, 4–22–1–18 (Burn's Code Ed.); *Bolerjack v. Forsythe* (1984), Ind.App., 461 N.E.2d 1126, 1131, *trans. den.* In the instant case, the trial court set aside the ICRC decision and remanded the cause for further proceedings because it believed that the erroneous finding by the ICRC hearing officer prejudiced the result. The record reveals that it did not.

■ In November, 1984, the hearing officer entered his Recommended Findings of Fact, Conclusions of Law, and Order which contained the erroneous basic fact regarding reinstatement of the reading program. The Academy filed objections to that Order and in February, 1985, a panel of seven members of the ICRC heard oral argument on those objections. The ICRC adopted the hearing officer's original Order, that Bernauer was the victim of a retalitory discharge. The ICRC also recognized and corrected the factual error regarding the reading program's reinstatement when it adopted the hearing officer's Order. Consequently, it was clear error for the trial court to remand this cause of action for a redetermination on the retaliation issue based on an "erroneous finding." A trial court reviewing an administrative determination is quite limited, and it cannot overturn an agency's determination merely because it would have reached a different result on the evidence. *Department of Financial Institutions of State of Indiana v. Beneficial Finance Company* (1981), Ind.App., 426 N.E.2d 711, 713.

## II.

### Damages

■ West's AIC 22–9–1–6(i) (Supp.1987) provides that it is illegal to discriminate against any person who files a complaint with the Indiana Civil Rights Commission.

Under subsection (k)(1)(A) of that statute, the commission has the power to restore losses as a result of discriminatory treatment. To carry out the purposes of IC 22–9–1–6(i), a discharged employee should be restored, as nearly as possible, to the same situation he would have occupied if he had not been the victim of an illegal retaliatory discharge. In most but not all cases, this requires both reinstatement and reimbursement. *Haynes v. McIntosh* (N.D.Ind.1984), 604 F.Supp. 10, 20 (remedy for retaliatory discharge in violation of 29 U.S.C. § 216(b)). Although we are not bound by federal decisions, in the past they have provided guidance in cases involving Indiana's Civil Rights Act. *Ali, supra,* 505 N.E.2d at 143.

Bernauer complains that the trial court erred by excluding damages for summer school teaching. The Academy argues that the trial court was correct because Bernauer did not mitigate her damages. The Academy points out that in 1975, the year that Bernauer's fulltime teaching contract was not renewed, she did teach summer school at the Academy, but thereafter she never reapplied for summer work.

■ It is clear that when an employment contract has been breached, the non-breaching party has a duty to make a reasonable effort to find work of a similar nature. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 275, *trans. den.* Similarly, under federal law, it has been written that a wrongfully discharged worker cannot simply leave the labor force in the hope of being made whole by a judgment of law. The worker must attempt to mitigate the damages caused by the wrongful discharge. *Hunter v. Allis-Chalmers Corp.* (7th Cir. 1986), 797 F.2d 1417, 1428. Yet the burden of showing that the employee failed to mitigate damages is on the employer. *Richman, supra,* 406 N.E.2d at 275. Although the Academy argues that Bernauer was not diligent because she did not apply for a summer teaching position after 1975, the record also reveals that she made many efforts to find employment.

Bernauer, who was qualified as both a remedial reading instructor and a librarian, worked as a temporary librarian in Maryland for six months in 1976. She then worked as a librarian in Ohio for a year before returning to the Culver area. She reapplied for her job at the Academy, but was told by Colonel Barone's replacement that although he would like to hire her, he was instructed not to do so by the Academy's Board of Directors. In the Culver area she also sought work in the county school systems. Although initially she was unsuccessful in finding a school related position, she worked as a temporary administrator of a county fuel assistance program. After that program ended, Bernauer found work for two years as a remedial reading teacher in the Culver Community Schools. Bernauer's husband, who was afflicted with Alzheimer's Disease, was subsequently hospitalized in Fort Wayne, Indiana, and she accompanied him there and was employed as a night librarian at Saint Francis College. During this time, she also taught two classes for Indiana University/Purdue University. In February 1982, Mrs. Bernauer's husband died. Thereafter she left Indiana for Pennsylvania to pursue further studies. Bernauer uses 1982 as the cutoff date for her claim for damages.

■ The above evidence reveals that Bernauer did not take herself out of the labor force, and she mitigated her damages by actually finding other work. These attempts are sufficient to prove that Bernauer attempted to lessen her damages, and the damage award in the instant case can simply be reduced by the amount she earned through other employment. *Board of School Trustees of Baugo Community Schools v. Indiana Education Employment Relations Board* (1980), Ind.App., 412 N.E.2d 807, 810. This is exactly what the ICRC did in its Findings of Fact and Conclusions of Law.

The next error alleged by Bernauer was the decision by the trial court to use 1980 instead of 1982 as the cutoff date for lost wages. The Academy argued that in 1980 Bernauer was no longer available to work

in the Culver area because that was when she moved to Fort Wayne. *Ryan v. Raytheon Data Systems* (D.Mass.1984), 601 F.Supp. 243 (plaintiff who moved from Massachusetts to Florida because of her husband's job voluntarily took herself out of the Massachusetts job market). The Academy urges us to conclude that because Bernauer was unavailable for work in its geographical area, she has failed to make a reasonable effort to mitigate her damages.

While we have held that an employee need not be bound to accept similar employment in a different locality, *Board of School Trustees, supra*, 412 N.E.2d at 810, it does not necessarily follow that an employee cannot accept similar employment in a different locality in order to mitigate damages. Otherwise, some people who have no job prospects in the employer's geographical area would risk cutting off their damage claims by taking a job someplace else. Such a policy would not only stifle an employee's initiative to find work, but it could place the employee in a Draconian position with respect to job opportunities outside the employer's area.

The Academy's reliance on *Ryan* is not persuasive. In *Ryan,* the plaintiff's husband took a job in Florida, and she left Massachusetts with him to advance his career. Under these circumstances, the employer met its burden to show that the employee was not available for work. *Ryan, supra*, 601 F.Supp. at 253; *see also Miller v. Marsh* (11th Cir.1985), 766 F.2d 490 (employee who attended law school fulltime was unavailable for work so as to cut-off employer's liability). In the instant case, the evidence reveals that Bernauer was most definitely available for work, and she aggressively sought employment. When nothing could be found locally she went elsewhere to obtain work, but she always returned to the Culver area where her family lives and where she had a house. It wasn't until her husband was placed in the Fort Wayne hospital that she left the Culver area and worked as a night librarian there. She stayed in Fort Wayne with her husband until 1982 when he died. Bernauer does not claim any damages after that date.

■ Bernauer's move to Fort Wayne did not make her unavailable for work as were the employees in *Ryan* and *Miller, supra.* Bernauer's situation was unlike that of the full-time law student who could not work while she was in class or the employee who moved to further her husband's career. Bernauer left after having exhausted her local employment opportunities, and she was able to further mitigate her damages by working other jobs in another area. The ICRC was correct in using the 1982 cut-off date and its decision was supported by substantial evidence. Therefore, it was not contrary to law and it should not have been disturbed.

### III.

#### *Reinstatement*

■ The trial court also ruled that the ICRC's ruling to reinstate Bernauer was "unconscionable" and "contrary to law". In an earlier case, this court concluded that the remedy of reinstatement is not precluded by IC 22-9-1-6(k)(1), *Indiana Civil Rights Commission v. Midwest Steel* (1983), Ind.App., 450 N.E.2d 130, 140 *reh. den.,* so the ICRC's reinstatement order was within its authority. *Indiana Dept. of Corrections v. Indiana Civil Rights Comm.* (1985), Ind.App., 486 N.E.2d 612, 622, *trans. den.*

Addressing the merits of this issue, the Academy argues that the trial court correctly reversed the reinstatement order because that remedy is not proper where the passage of time or other intervening events have rendered Bernauer no longer qualified for the position. The Academy claims that because Bernauer has not taught since 1982 and that its reading program has changed, she should not be reinstated. *Castle v. Sangamo Weston, Inc.* (N.D.Fla. 1986), 650 F.Supp. 252, 256 (reinstatement was inappropriate after eight years had passed and the employer no longer had a comparable position.

■ Bernauer's qualifications were an issue of fact to be resolved by the administrative agency and not the reviewing court.

*Indiana Education Employment Relations Bd. of Baugo Community Schools* (1978), 176 Ind.App. 680, 415 N.E.2d 414, 416. The ICRC heard evidence regarding Bernauer's qualifications to again teach at the Academy, which include her current state license to teach library and reading in grades kindergarten through 12 and all subjects in kindergarten through 8, and recent coursework in areas that would complement her skills. When there is substantial evidence to support the agency's decision, a reviewing court may not disturb it unless it violates one of the other standards set down in West's AIC 4–22–1–18(c) (Supp.1987);[1] *Ali, supra,* 505 N.E.2d at 142. Given this narrow scope of review, since we have already concluded that the ICRC reinstatement order was supported by substantial evidence, and it was not contrary to law, we must next determine if it was arbitrary and capricious or an abuse of discretion.

The Academy argues that Bernauer was unqualified. The ICRC's decision to reinstate her was therefore arbitrary and capricious. The burden of proving this claim is with the Academy, who is attempting to upset the ICRC's order. *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, 354, *trans. den.* To be arbitrary and capricious, an action must be without consideration and in disregard of the facts and circumstances of the case; it is without some basis which would lead reasonable and honest persons to the same conclusion. *Id.* The Academy has pointed to evidence in the record that its reading program has changed somewhat since Bernauer left, but the trial court cannot reweigh conflicting evidence for purposes of determining for whom it preponderates. There is also evidence in the record to indicate that Bernauer is qualified to again teach at the

Academy, and it cannot be said that the ICRC's decision to reinstate her was without some rational basis.

Similarly, we cannot conclude that the ICRC abused its discretion by ordering Bernauer's reinstatement. An abuse of discretion occurs when the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Taylor v. Taylor* (1985), Ind., 436 N.E.2d 56, 58, *reh. den.* As already discussed, the evidence regarding Bernauer's qualifications was conflicting, and it was the ICRC who weighted it and had the authority to order reinstatement. Its decision was not clearly against logic and the evidence presented. A reviewing court may not attempt to control an agency's valid use of its discretionary powers or to substitute its judgment for that of the agency. *Indiana Alcoholic Beverage Commission v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259, 268, *trans. den.*

It follows then that the trial court erred by remanding this case to the ICRC for redetermination of the retaliation issue. Likewise, the trial court erred by limiting the damages to 1980 and omitting summer school wages. Its decision is reversed with instructions to reinstate the order of the ICRC.

GARRARD, P.J., and BUCHANAN, J., concur.

---

1. If such court finds such finding, decision, or determination of such agency is:
   (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
   (2) contrary to constitutional right, power, privilege, or immunity;
   (3) in excess of statutory jurisdiction, authority, or limitations, or short or [sic] statutory right;
   (4) without observance of procedure required by law; or
   (5) unsupported by substantial evidence;
   the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.